UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————————

| | |
|---|---|
| KAPPE ASSOCIATES, INC., | : |
| | : |
| Plaintiff, | : |
| v. | :   No. 5:15-cv-02211-JFL |
| | : |
| CHESAPEAKE ENVIRONMENTAL | : |
| EQUIPMENT, LLC; JASON NORTH; | : |
| JEFFREY MANCINI; KATHLEEN MANCINI; | : |
| NATHAN LEYBURN; DANIEL THOMPSON, | : |
| | : |
| Defendants. | : |

—————————————————————————

## MEMORANDUM

**Defendants' Motion to Dismiss, ECF No. 5 – Granted in part and denied in part**

**Joseph F. Leeson, Jr.**                                          **March 31, 2016**
**United States District Judge**

    A Motion to Dismiss was filed by Defendants Chesapeake Environmental Equipment,

LLC, Jason North, Jeffrey Mancini, Kathleen Mancini, Nathan Leyburn, and Daniel Thompson.

ECF No. 5. For the reasons stated below, Defendants' Motion is granted in part and denied in

part.

## I.      Background

    According to the Complaint, Plaintiff Kappe Associates, Inc. ("Kappe") is a Maryland

corporation that "operates as a . . . representative of various manufacturers and sellers of

equipment, products and services used in public and private potable water and wastewater

treatment plants, pumping stations and related potable water and sanitary sewer facilities."

Compl. ¶¶ 1, 22, ECF No. 1. In addition, "Kappe has developed proprietary 'KA Systems'

'package' wastewater treatment plants which it primarily sells directly to non-municipal

1

entities." <u>Id.</u> ¶ 23. The geographic markets that Kappe serves include Pennsylvania, Maryland, Virginia, the District of Columbia, West Virginia, and Ohio. <u>Id.</u> ¶ 24.

Defendant Chesapeake Environmental Equipment, LLC, ("Chesapeake") is a Maryland corporation that was formed "on or about October 15, 2013." <u>Id.</u> ¶¶ 5-6. Defendant Jason North is a resident of Pennsylvania and is the president of Chesapeake. <u>Id.</u> ¶¶ 7-8. Defendant Jeffrey Mancini is a resident of Virginia and a vice-president of Chesapeake. <u>Id.</u> ¶¶ 9, 11. Defendant Kathleen Mancini is also a resident of Virginia and is the wife of Jeffrey Mancini. <u>Id.</u> ¶ 10. Defendant Nathan Leyburn is a resident of Maryland and a vice-president of Chesapeake. <u>Id.</u> ¶¶ 12-13. Defendant Daniel Thompson is a resident of Maryland and a sales associate at Chesapeake. <u>Id.</u> ¶¶ 14-15.

Defendants North, Thompson, and Jeffrey Mancini are former Kappe employees. Thompson resigned from Kappe in early September 2013, and North and Mancini resigned on or about October 25, 2013. <u>Id.</u> ¶¶ 89, 92. The Complaint alleges that prior to their resignations, North, Thompson, and Mancini, with the knowledge, assistance, and cooperation of Defendant Nathan Leyburn:

> a. Formed Chesapeake as an entity intended to directly compete with Kappe in the same geographic areas and on the same projects and for the same business;
>
> b. Contacted manufacturers and vendors who were under existing contractual relationships with Kappe and made negative comments as to Kappe's abilities and performance in order to weaken or destroy the relationship such manufacturer or vendor had with Kappe, and to increase the potential that such manufacturer or vendor would leave Kappe;
>
> c. Contacted manufacturers and vendors who were under existing contractual relationships with Kappe and sought to convince such manufacturers and vendors to end their existing relationships with Kappe and to enter into contractual relationships with Chesapeake;
>
> d. Approached other Kappe employees and attempted to convince such other employees to leave Kappe, with the intention and hope that such a coordinated,

surprise departure of multiple Kappe employees would weaken Kappe, and would both strengthen Chesapeake and would make Kappe a less effective competitor for Chesapeake;

e. Approached [Edward J.] Serowka[1] and sought to have Serowka end his existing business relationship with Kappe and to enter into a new business relationship with Chesapeake, pursuant to which Serowka would now compete against Kappe in regard to the same customers and the same business and the same projects for which Serowka was already involved for Kappe;

f. Approached Serowka and sought to have Serowka take intellectual property belonging to Kappe and to use such intellectual property for the benefit of Chesapeake and directly against the ongoing business interest of Kappe;

g. Contacted engineers and buyers of water and wastewater products and services with whom they were dealing as Kappe representatives and sought to have such engineers and buyers end their existing business relationships with Kappe and to enter into a new business relationship with Chesapeake, including as to projects and purchases regarding which Chesapeake would be competing against Kappe;

h. Took confidential information and intellectual property belonging to Kappe so that such confidential information and intellectual property could be used by Chesapeake;

i. Developed and put in place a marketing plan that included, but was not limited to, a webpage and other internet presence for Chesapeake, and created marketing which contained false information both as to Chesapeake and as to Kappe, including false information that Chesapeake was now representing manufacturers and vendors that actually had relationships with Kappe, and that certain long-established Kappe employees were working for Chesapeake, with such marketing being designed to damage Kappe and to draw business away from Kappe and to Chesapeake;

j. Used Kappe assets to contact prospective new customers and to encourage such prospective customers to enter into contracts and relationships with Chesapeake rather than with Kappe;

---

1       Kappe alleges that Edward J. Serowka, Jr., was the primary design engineer on Kappe's KA Systems projects. Id. ¶ 51. Serowka and Lakeland InnovTech ("Lakeland"), a business entity of which Serowka was president, were initially named as defendants in Kappe's Complaint. By Order dated November 12, 2015, the claims against Serowka and Lakeland were severed from the present action. See Order, ECF No. 22. Accordingly, this Opinion will address the claims asserted in the Complaint only as they apply to Defendants Chesapeake, North, the Mancinis, Leyburn, and Thompson.

k. Took opportunities provided by Kappe and used expense account funds and other assets which had been provided to them by Kappe for the purpose of promoting, expanding and otherwise benefitting Kappe, with North, Mancini, and Thompson utilizing such opportunities, assets and funds to promote and benefit Chesapeake rather than Kappe; and

l. Disparaged the management of Kappe, including statements which were specifically intended to undercut the confidence of those with current and pending contracts with Kappe and with engineers and owners related to the capabilities of Kappe, including the false representation that Kappe was managed by "old" personnel and that the longevity of Kappe was in doubt.

Id. ¶ 99.

Kappe's Complaint asserts claims against various combinations of Defendants. First, the Complaint asserts the following claims against all Defendants except Kathleen Mancini: Tortious Interference with Business Relations (Count II); Tortious Interference with Prospective Business Relations (Count III); Violation of the Lanham Act (Count IV); Civil Conspiracy (Count VI); Fraud (Count VII); Action for an Accounting (Count IX); Unjust Enrichment and Imposition of Constructive Trust (Count XI); and Preliminary and Permanent Injunction (Count XV).

The Complaint asserts the following claims against Defendants North, Mancini, and Thompson only: Breach of Contract (Count I), Breach of Fiduciary Duties (Count V), Trespass to Chattels (Count XII); Procuring Information by Improper Means (Count XIII); and Injurious Falsehood/Trade Libel (Count XVI).

The Complaint asserts that Defendants Mancini, North, Thompson, and Chesapeake violated the Computer Fraud and Abuse Act (Count XIV).

Finally, the Complaint asserts a claim of fraud against Jeffrey Mancini and Kathleen Mancini (Count X). With respect to this claim – the only claim in which Kathleen Mancini is named as a Defendant – Kappe alleges that it paid for expenses related to Jeffrey Mancini's relocation from Delaware to Virginia in June 2012 at the request of Jeffrey Mancini. Id. ¶¶ 181-

4

85. Further, Kappe alleges that Jeffrey Mancini fraudulently represented that the relocation was for the benefit of Kappe, when the real purpose of the move was to enable him to further compete with Kappe in Virginia. Id. ¶¶ 194-95. Kappe alleges that Kathleen Mancini benefitted from the relocation payments and that she was "fully aware of all the actions of her husband." Id. ¶ 194.[2]

In response to Kappe's Complaint, Defendants filed the present Motion to Dismiss. ECF No. 5-1.

## II.    Legal Standards

### A.    Rule 12(b)(2) Motion to Dismiss – Personal Jurisdiction

The Honorable Mitchell S. Goldberg of this Court aptly described the Rule 12(b)(2) motion to dismiss standard as follows:

> When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), I must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." Id. A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Provident Nat. Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987).

Campbell v. Fast Retailing USA, Inc., No. CV 14-6752, 2015 WL 9302847, at *2 (E.D. Pa. Dec. 22, 2015)

---

[2]    The Complaint also includes a Count VIII asserting claims of fraud, conversion, and breach of contract against Serowka; however, as noted above, all claims against Serowka have been severed from this action.

**B.    Rule 12(b)(6) Motion to Dismiss**

In rendering a decision on a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). Second, the court must determine whether the complaint "states a plausible claim for relief, . . . [which is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. Hedges

v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc.,
926 F.2d 1406, 1409 (3d Cir. 1991)).

III.    **Analysis**

      A.    **Personal Jurisdiction: Kappe has failed to show that this Court has personal
            jurisdiction over Leyburn, Thompson, and the Mancinis; however, the Court
            will permit jurisdictional discovery.**

Defendants contend that this Court lacks jurisdiction over Defendants Leyburn,
Thompson, and Jeffrey and Kathleen Mancini.[3] Specifically, Defendants contend that these
individuals "have not purposefully directed activities within Pennsylvania, or purposefully
availed themselves of the protections of Pennsylvania law, in connection with any activities
which are in any way related to Plaintiff's claim." Defs.' Mem. 8, ECF No. 5-2. The four
Defendants in question have provided declarations stating that they do not consent to jurisdiction
in Pennsylvania and that they do not have clients in Pennsylvania or do business in Pennsylvania.
See ECF Nos. 5-3; 5-4; 5-5; 5-6.

Kappe replies that this Court has specific personal jurisdiction over each of the
Defendants in question because they "personally engaged in wrongful action related to the
claims being made in this lawsuit, including actions that had a connection with Pennsylvania."
Pl.'s Mem. Opp'n 7, ECF No. 7-1. Specifically, Kappe contends that Defendants Thompson,
Leyburn, and Jeffrey Mancini had email contacts with Defendant North, whose home and office
were in Pennsylvania. Kappe contends that these Defendants were "involved in sending emails to
and receiving emails from Defendant North in Pennsylvania as to their collective efforts to get . .
. Serowka to break his existing contractual relationship with Kappe and to secure for Defendant
Chesapeake the designs and other information belonging to Kappe regarding its proprietary KA

---

[3]    Defendants do not contest the Court's jurisdiction over Defendants Chesapeake and
North.

Systems." Id. at 10. Further, the Defendants "exchanged emails with Defendant North regarding efforts to improperly use information on several projects which had been developed at Kappe's expense while Defendant Thompson had worked for Kappe in order to secure the sale for Chesapeake." Id. at 10. In addition, "the emails exchange[d] among the defendants reflect that they were using a prior proposal that had been submitted for Kappe in order to compete with Kappe." Id. at 11. In support of these contentions, Kappe has provided an affidavit from Kappe's President, Chad Fenstemaker, stating that "Defendants [Jeffrey] Mancini, Thompson, and Leyburn sent emails to Defendant North who was located in Pennsylvania, and each received and responded to email sent from Defendant North," Fenstemaker Aff. ¶ 18, ECF No. 8, and Kappe has attached copies of the relevant emails to the Fenstemaker affidavit. The emails are summarized in the Fenstemaker affidavit as follows:

A.    Defendant Jason North in Pennsylvania sent an email to Defendant Daniel Thompson on September 4, 2013 which enclosed the business plan which the defendants were developing for Chesapeake. Such plan sets forth that they would target Pennsylvania as one of 5 states in which they would do business. . . .

B.    On September 25, 2013, Defendant Leyburn sent an email to Defendant North in Pennsylvania and to Defendants Mancini and Thompson as to the business plan being formulated for Chesapeake. . . .

C.    On October 3, 2013, while he was still an employee of Kappe, Defendant Jeff Mancini sent an email on his Chesapeake account to Defendant Thompson as to targeting certain manufacturers including a Pennsylvania supplier.

D1.   On November 18, 2013, Defendant Leyburn sent an email to Defendant North in Pennsylvania and to Defendants Mancini and Thompson addressing how they could "separate" Defendant Lakeland from its ongoing contractual relationship with Kappe. Such email addresses their efforts to make use of KA Systems.

D2    On November 18, 2013, Defendant North sent an email to Defendants Leyburn, Thompson and Mancini addressing the status of the efforts to

have Defendants Serwoka and Lakeland end their contractual relationship with Kappe.

. . . .

F.      On November 18, 2013 . . . Defendant North sent an email to Defendants Leyburn, Thompson and Mancini as to Chesapeake's efforts to acquir[e] [a project in Conowingo, Maryland]. Such email states that Kappe was not yet aware that they were seeking to take such project, which project had been work[ed] on by Defendant Thompson while he was an employee of Kappe.

G.      On November 21, 2013, Defendant Leyburn sent an email to Defendants North, Thompson and Mancini discussing . . . how to have Defendant Serwoka and Lakeland terminate [their] contractual relationship with Kappe. This email is part of a chain that includes an email dated November 18, 2013 sent by Defendant Mancini to Defendant North in Pennsylvania and to Defendants Leyburn and Thompson about the defendants trying to acquire work on several projects, specifically naming the Conowingo project on which Defendant Thompson had worked while a Kappe employee.

H.      On December 9, 2013, Defendant Leyburn sent an email to Defendants North, Thompson and Mancini stating that Defendant Serwoka was still bidding work with Kappe and discussing on what date in the future they should have Defendant Serwoka terminate his relationship with Kappe.

I.      On December 9, 2013 . . . Defendant Mancini sent an email to Defendants North, Thompson and Leyburn as to securing the Conowingo work and asking whether any payment terms had previously been discussed. Prior payment term discussions would have included discussions on this project when they had solicited work from Conowingo as Kappe employees.

J.      On December 19, 2013 Defendant North sent an email to Defendants Leyburn, Thompson and Mancini as to the Conowingo project. Defendant North acknowledged that efforts on that project ha[d] been going on for over a year and acknowledged that the documents previously submitted had been submitted for the sale of a product of KA Systems. In the email chain preceding this email, Defendant North had acquired the old Kappe quote for this project. Defendant North advises the other defendants that "the absolutely first thing to do is to requote it through Chesapeake."

K.      While an employee of Kappe, Defendant Thompson had worked to develop plans for a wastewater facility on a project known as the "Scout Camp." On December 19, 2013, Defendant North sent an email to Defendants Thompson, Leyburn and Mancini stating that they needed [to] requote the Scout Camp project. By an email dated December 19, 2013

> Defendant Thompson wrote to Defendant North stating that he would have the changes made to remove Kappe and KA Systems and to replace them with Chesapeake and Lakeland.

Fenstemaker Aff. ¶ 18.

In sum, the emails produced by Kappe include five emails from North to various Defendants; four emails from Leyburn to North and other Defendants; two emails from Mancini to North and other Defendants; and one email from Thompson to North.

With respect to Defendant Kathleen Mancini, Kappe asserts that she was "involved in that portion of the conspiracy" concerning Jeffrey Mancini's relocation to Virginia and that "[a]s a person involved in the conspiracy, the actions of the others involved in the conspiracy, including Defendant North, are attributable" to her. Pl.'s Mem. Opp'n 12-13.

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). In Pennsylvania, the applicable law is the long-arm statute codified at 42 Pa. Cons. Stat. Ann. § 5322. Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998). The statute permits the Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment. Id.; Farino, 960 F.2d at 1221. The Supreme Court has determined that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945).

The court must engage in a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum state; (2) whether the litigation arises out of or relates to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum." D'Jamoos, 566 F.3d at 102-03. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958). If the first two elements are satisfied, "a court has the option of evaluating whether exercising jurisdiction comports with notions of 'fair play and substantial justice,'" such that "even if a defendant has the requisite minimum contacts with the forum state, other factors may militate against exercising jurisdiction." Pennzoil Prods. Co., 149 F.3d at 205.

The Court of Appeals for the Third Circuit has observed that "[p]hysical entrance is not required" for a defendant to purposely avail itself of the privilege of conducting activities within the forum. See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007); see also Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). However, "what is necessary is a deliberate targeting of the forum." O'Connor, 496 F.3d at 317. "Identifying some purposeful contact with the forum is but the first step in the specific-jurisdiction analysis. The [plaintiff's] claims must also 'arise out of or relate to' at least one of those contacts." Id. at 318. In determining whether a claim arises out of or relates to a given contact, "the analysis may begin" with a "but-for" causation inquiry in

which the court considers whether "the plaintiff's claim would not have arisen in the absence of the defendant's contacts." See id. at 319, 322. However, although the "but-for" inquiry may be a starting point, "[t]he animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." Id. at 322. In other words, "[o]ut-of-state residents who 'exercise[ ] the privilege of conducting activities within a state . . . enjoy[ ] the benefits and protection of' the state's laws; in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities." Id. at 322 (quoting Int'l Shoe, 326 U.S. at 319).

The emails Kappe has produced to date are insufficient to establish personal jurisdiction over the Defendants in question. Five of the emails produced by Kappe were sent by North, who has not contested jurisdiction. Although Kappe has produced a handful of emails sent by the Defendants to North in Pennsylvania, these emails are not sufficient by themselves to establish sufficient contacts with Pennsylvania. As summarized above, the emails concern the Chesapeake business plan in general, the Defendants' dealings with Serowka (who, according to the Complaint, resides and conducts business in Indiana), and the Conowingo project, which is located in Maryland. Although these emails appear to relate in a general way to Kappe's claims, they are not a "but-for" cause of those claims, nor do the emails otherwise indicate that the Defendants sought to enjoy the benefits of Pennsylvania's laws.

Kappe contends that even if the Defendants' contacts are not sufficient by themselves to support personal jurisdiction, jurisdiction can be established under the "co-conspirator" doctrine, whereby "the actions of each co-conspirator which involve contact with Pennsylvania are to be attributed to all other co-conspirators provided that the other co-conspirators were aware or should have been aware of the actions in question." Pl.'s Mem. Opp'n 9. However, even if this

doctrine applies,[4] it requires the plaintiff to show that "substantial acts in furtherance of the conspiracy occurred within the forum state, of which the out-of-state co-conspirator was or should have been aware." See Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 846 F. Supp. 374, 380 (E.D. Pa. 1994).  Kappe has failed to show or allege that any substantial acts in furtherance of the conspiracy occurred in Pennsylvania. Although Kappe asserts in its Memorandum in Opposition to Defendants' Motion that "Defendant North located in Pennsylvania took multiple acts designed to damage Kappe," it does not specify the nature of these acts, nor does it cite to any section of the Complaint in which such acts are alleged. Pl.'s Mem. Opp'n 12. Finally, with respect to Kathleen Mancini, even if Kappe had adequately alleged substantial acts in furtherance of the conspiracy on the part of Defendant North, Kappe does not allege that Kathleen Mancini was or should have been aware of North's acts.

Kappe requests that in the event that the Court determines that Kappe has not asserted sufficient facts to support jurisdiction over the Defendants, Kappe be given the opportunity to conduct jurisdictional discovery. "[J]urisdictional discovery generally relates to corporate defendants and the question of whether they are 'doing business' in the state. . . . Where the defendant is an individual, the presumption in favor of discovery is reduced." Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997) (citations omitted).  But in any case, "[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and

---

[4]     See Aluminium Bahrain B.S.C. v. Dahdaleh, No. CIV. 8-299, 2012 WL 5305169, at *2 (W.D. Pa. Oct. 25, 2012) ("While the co-conspirator theory of personal jurisdiction is generally accepted by federal district courts applying Pennsylvania law . . . there is substantial ground for difference of opinion because it has not been recognized by the Pennsylvania Supreme Court, federal courts applying Pennsylvania law have not predicted how the Supreme Court of Pennsylvania would rule on the issue, and various circuit courts and district courts disagree on its application.").

the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained."

Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (modification in original)

(quoting Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Where the plaintiff makes "this required threshold showing, courts within this Circuit have

sustained the right to conduct discovery before the district court dismisses for lack of personal

jurisdiction." Id. at 456.

      Kappe has presented facts concerning Defendants' conduct that suggest with reasonable

particularity the possible existence of the requisite contacts. In particular, the fact that

Chesapeake's president, Defendant North, is located in Pennsylvania suggests that the

Defendants may have had additional contacts with Pennsylvania. Accordingly, the Court permits

Kappe leave to conduct jurisdictional discovery. The Motion to Dismiss is denied without

prejudice to Defendants' right to renew at the close of jurisdictional discovery.

      **B.**    **Computer Fraud and Abuse Act: Kappe fails to state a claim.**

      Defendants contend that Kappe fails to state a claim for violation of the Computer Fraud

and Abuse Act ("CFFA") because, among other things, Kappe has failed to allege that any of the

Defendants accessed a protected computer "without authorization." Defs.' Mem. 11-12.

Defendants observe that courts in this district have generally adopted an interpretation of CFFA

according to which "an employee given access to a work computer is authorized to access that

computer regardless of his or her intent to misuse information." Id. (quoting Dresser-Rand Co. v.

Jones, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013)). Kappe responds that it "recognizes that the

prevailing view in the district courts in Pennsylvania is that a claim under this statute does not

exist under the circumstances" alleged in the Complaint. Pl.'s Mem. Opp'n 19. Nevertheless,

"[i]n order to protect its rights in the event any of the [district court] decisions are reversed or a

contrary decision is issued by the Supreme Court or the Third Circuit, Kappe continues to assert that the defendants violated the Computer Fraud and Abuse Act in the present circumstances." Id.

This Court, following its predecessors in this district, see Dresser-Rand Co., 957 F. Supp. 2d at 616 (describing the approach taken by courts in this district), finds that Kappe has failed to state a claim for violation of the Computer Fraud and Abuse Act. Because further amendment of the Complaint with respect to this claim would be futile, the Court dismisses Kappe's CFFA claim with prejudice.

### C.    Lanham Act: Kappe states a claim of false advertising.

Defendants contend that Kappe has failed to state a claim under the Lanham Act because Kappe fails to allege "which materials, if any, Defendants are supposedly using that will cause a likelihood of confusion." Defs.' Mem. 13. Kappe responds that its Complaint contains allegations that Defendants "engaged in false advertising as to the services and capabilities and experiences they had." Pl.'s Mem. Opp'n 14. Specifically, Kappe cites its allegation that "Chesapeake's initial publication of its website include[d] photographs and depictions which were intended to suggest capabilities of defendants" but were "false, in that they included photographs and depictions which were not the work of Chesapeake or any of its principals." Compl. ¶¶ 127-28. Kappe alleges that as a result of the website and other conduct the Defendants "unlawfully diverted clients and business from Kappe." Id. ¶ 135. Kappe contends that these allegations are sufficient to state a claim of false advertising under the Lanham Act.

Section 43(a) of the Lanham Act prohibits using "in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" either "on or in

15

connection with any goods or services, or any container for goods," which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To establish a violation of § 43(a), the moving party must show that a claim meets the following five requirements:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3d Cir. 2014) (quoting Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 248 (3d Cir. 2011)).With respect to the first requirement, a statement may be "false or misleading" in one of two ways: the statement may be either "literally false" or "literally true or ambiguous, but ha[ving] the tendency to deceive customers." Id. (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002)).

> "A determination of literal falsity rests on an analysis of the message in context." Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994). In deciding whether an advertising claim is literally false, a court must decide first whether the claim conveys an unambiguous message and second whether that unambiguous message is false. Novartis, 290 F.3d at 586. "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.' " Id. at 586–87 (quoting Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 35 (1st Cir. 2000)). Unless the claim is unambiguous, however, it cannot be literally false. Id. at 587. "'The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion . . . the less likely it is that a finding of literal falsity will be supported.'" Id. (quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1181 (8th Cir. 1998)).

Groupe SEB USA, Inc., 774 F.3d at 199.

Case 5:15-cv-02211-JFL   Document 23   Filed 03/31/16   Page 17 of 23

Here, Kappe has not stated whether it is proceeding under the "literally false" or the "ambiguous" theory. Nevertheless, at this stage Kappe has adequately alleged that Defendants' website was "false or misleading" under the Lanham Act.

### D.    The "Economic Loss" and "Gist of the Action" Doctrines and Kappe's Tort Claims

Defendants contend that Kappe's tort claims in Counts II, III, V, VI, VII, X, XI, XII, and XIII are barred by the Economic Loss Doctrine and the Gist of the Action Doctrine. Defs.' Mem. 15. Kappe responds that these doctrines do not apply to its tort claims. Pl.'s Mem. Opp'n 19-21.

"The two doctrines, gist of the action and economic loss, are closely related." Graham Packaging Co., L.P. v. Transplace Texas, L.P., No. 1:15-CV-01186, 2015 WL 8012970, at *2 (M.D. Pa. Dec. 7, 2015).

> Both doctrines are "designed to maintain the conceptual distinction between breach of contract claims and tort claims." See Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010) (applying gist of the action doctrine); Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (applying economic loss doctrine) (interior citations omitted). The gist of the action doctrine precludes "plaintiffs from re-casting ordinary breach of contract claims into tort claims." Pediatrix, 602 F.3d at 548. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Werwinski, 286 F.3d at 671 (internal citation omitted).
>
> "The distinction between the two doctrines is largely one of pedigree." 7 Hon. Michael M. Baylson et al., Business and Commercial Litigation in Federal Courts § 78:8 (3d ed.). The economic loss doctrine "developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 n.11 (3d Cir. 2001) (internal citations omitted). The gist of the action doctrine developed outside the context of products liability cases. Id.

Id.

"In Bohler-Uddeholm America, Inc. and Pediatrix Screening, Inc., the United States Court of Appeals for the Third Circuit noted that the gist of the action doctrine 'is a better fit'

than 'the economic-loss doctrine' for a non-products liability case." Id. (citing Bohler-Uddeholm Am., Inc., 247 F.3d at 104 n.11; Pediatrix Screening, Inc., 602 F.3d at 544 & n.5). Accordingly, because this is not a products liability case, the Court will consider only whether the gist of the action doctrine applies to bar Kappe's tort claims and will deny Defendants' motion as it relates to the economic loss doctrine. See id.

The gist of the action doctrine "looks to the source of the claims asserted and evaluates whether tort claims pleaded alongside contract claims constitute independent causes of action." Furniture Sols. & Res. v. Symmetry Office, LLC, No. CV 15-4774, 2015 WL 9302915, at *5 (E.D. Pa. Dec. 22, 2015). The Third Circuit has explained that, under Pennsylvania law, "[t]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Bohler-Uddeholm Am., Inc., 247 F.3d at 104 n.11 (quoting Redevelopment Auth. of Cambria County v. International Ins. Co., 685 A.2d 581, 590 (Pa. 1996)).

Kappe's breach of contract claim is vague, alleging that North, Thompson, and Jeffrey Mancini, "breached their obligations under their respective employment agreements with Kappe, including, inter alia, their duty of loyalty and the implied covenant of good faith and fair dealing." Compl. ¶ 114. Kappe does not specify the conduct by which the Defendants allegedly breached these duties and obligations. Therefore, "[a]t this juncture of the litigation, the Court lacks sufficient information to decide whether the gist of the action doctrine applies." See Synthes, Inc. v. Emerge Med., Inc., No. CIV.A. 11-1566, 2012 WL 4205476, at *11 (E.D. Pa. Sept. 19, 2012).

> "'Caution must be exercised in dismissing a tort action on a motion to dismiss
> because whether tort and contract claims are separate and distinct can be a

factually intensive inquiry.'" <u>Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.</u>, No. Civ. A.11–4568, 2011 WL 6046923, at *8 (E.D. Pa. Dec. 6, 2011) (quoting <u>Haymond v. Lundy</u>, Nos. Civ. A.99–5015, 99–5048, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000)). Indeed, "the application of the gist of the action doctrine depends on the facts of each particular case." <u>Sensus USA, Inc. v. Elliott Bay Eng'g, Inc.</u>, No. Civ.A.10–1363, 2011 WL 2650028, at *7 (W.D. Pa. July 6, 2011).

<u>Id.</u>

"Where, as here, the factual nature of the allegations is unclear, 'this issue is best left for resolution . . . on a post-discovery motion for summary judgment.'" <u>See id.</u> (quoting <u>Sensus USA, Inc.</u>, 2011 WL 2650028, at *7 (W.D. Pa. July 6, 2011)); <u>see also</u> <u>Orthovita, Inc. v. Erbe</u>, No. CIV.A. 07-2395, 2008 WL 423446, at *4 (E.D. Pa. Feb. 14, 2008) ("Notwithstanding the efficacy of the doctrine, a court should be slow to dismiss claims under the gist of the action doctrine. Federal civil procedure allows parties to plead multiple claims as alternative theories of liability.").

The Court therefore denies Defendants' motion to dismiss Kappe's claims pursuant to the gist of the action doctrine, without prejudice to Defendants raising this issue again at a later stage of litigation.

### E.    Trade Secret Allegations

Defendants contend that although "[t]he basis of almost all of Plaintiff's allegations arise out of the incorrect assumption that the information allegedly removed by Defendants amounts to trade secrets," Kappe "fails to allege any specificity with respect to these alleged trade secrets." Defs.' Mem. 17. Defendants contend that for this reason, "the Counts referencing and relying upon an allegation that this information is a 'trade secret,' must be dismissed." <u>Id.</u> at 18.

Defendants are correct that the Complaint refers to "trade secrets" in various places. <u>See, e.g.</u>, Compl. ¶¶ 30, 34, 37, 45, 53, 99. However, the Complaint does not assert a claim of misappropriation of trade secrets under the Pennsylvania Uniform Trade Secret Act ("the

PUTSA"), 12 Pa. Cons. Stat. Ann. §§ 5301–5308, nor does it appear that Kappe is attempting to assert a common law tort claim of misappropriation of trade secrets. See Triage Consulting Grp., Inc. v. Implementation Mgmt. Assistance, Inc., No. CIV. 12-4266, 2013 WL 3488998, at *3 (E.D. Pa. July 11, 2013) (observing that the PUTSA generally preempts "tort, restitutionary[,] and other [Pennsylvania law] providing civil remedies for misappropriation of a trade secret" (quoting 12 Pa. Cons. Stat. Ann. § 5308(a))). Moreover, although Defendants seek a dismissal of "the Counts referencing and relying upon an allegation that th[e] information is a 'trade secret,'" Defendants do not specify which of Kappe's claims reference or rely on the trade secret allegation. In short, at this stage, it is not clear whether any of Kappe's claims depend on the trade secret allegation or whether Kappe's invocation of the phrase "trade secret" is simply surplusage. Accordingly, the motion to dismiss the claims relying on allegations of "trade secrets" is denied without prejudice to be raised again at a later stage of litigation.

**F.    Fraud Claims**

Defendants contend that Kappe's fraud claims in Count VII (against all Defendants except Kathleen Mancini) and in Count X (against Jeffrey and Kathleen Mancini) must be dismissed for failure to allege fraud with sufficient particularity in accordance with Federal Rule of Civil Procedure 9(b). Defs.' Mem. 19. With respect to Count VII, Kappe responds that "the paragraphs of the complaint set forth the fraudulent acts of those defendants in detail." Pl.'s Mem. Opp'n 22. With respect to Count X, Kappe responds that the Complaint asserts that Jeffrey Mancini "had represented that [his relocation to Virginia] was so that he could work for Kappe developing its Virginia sales territory . . . while in reality [he] intended to act as the Chesapeake representative in Virginia, directly competing against Kappe." Id. at 21. As to Kathleen Mancini,

Kappe contends that "the actions and misrepresentations made by Jeffrey Mancini are attributable to her." Id.

Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 577 (D.N.J. 2001)).

Here, under the "Count VII: Fraud" heading in the Complaint, the Complaint simply alleges that "Plaintiff incorporates by reference as part of this Count all averments of this complaint" and that "[t]he actions of each Defendant constitute fraud by such Defendant." Compl. ¶¶ 161-62. This is insufficient to meet the pleading standards of Rule 9(b). The Court therefore dismisses this claim but will permit Kappe to amend its Complaint to plead this claim with greater specificity.

With respect to Count X, the Complaint alleges that the Mancinis "falsely and intentionally represented that the relocation of their home to Virginia was for the benefit of Kappe." Id. ¶ 194. This is sufficient to apprise the Mancinis of the circumstances of the alleged fraud. The Court therefore denies Defendants' Motion to Dismiss Count X of the Complaint.

### G.      Injurious Falsehood/Trade Libel

In Count XVI of the Complaint, Kappe asserts claims of "injurious falsehood/trade libel" against Jeffrey Mancini, North, and Thompson. Compl. ¶ 230. Defendants contend that this claim must be dismissed because the tort of trade libel is subject to a one-year statute of limitations and the statements at issue (specifically, that Kappe is "old") are alleged to have been

made prior to October 25, 2013, over a year before the Complaint was filed. Defs.' Mem. 20.

Kappe does not directly respond to Defendants' contentions, although Kappe does assert that its

Lanham Act claim is not barred by Pennsylvania's one-year statute of limitations. See Pl.'s

Mem. Opp'n 18.

Defendants are correct that "[t]he statute of limitations for defamation/trade libel claims

provides that any such claim must be brought within one year from the date of accrual." See Knit

With v. Knitting Fever, Inc., No. CIV A 08-4221, 2009 WL 973492, at *3 (E.D. Pa. Apr. 8,

2009) (citing 42 Pa. Cons. Stat. § 5523). Because Kappe has alleged that the defamatory

statements in question were made over a year before Kappe filed its Complaint, Kappe's claim

for injurious falsehood/trade libel is dismissed. However, because the Complaint appears to refer

to other statements in addition to the "old" statement, the Court will permit Kappe to amend its

Complaint with respect to this claim.

### H.    Legal Accounting and Injunction

Defendants contend that Kappe's claims in Count IX ("Action for an Accounting" and

Count XV ("Preliminary and Permanent Injunction") must be dismissed because "these are

remedies, not separate causes of action." Defs.' Mem. 21.

> "An equitable accounting is improper where no fiduciary relationship exists
> between the parties, no fraud or misrepresentation is alleged, the accounts are not
> mutual or complicated, or plaintiff possesses an adequate remedy at law." Rock v.
> Pyle, 720 A.2d 137, 142 (Pa. Super. Ct. 1998). "Equitable jurisdiction for an
> accounting does not exist merely because the plaintiff desires information that [it]
> could obtain through discovery." Buczek v. First Nat'l Bank of Mifflintown, 531
> A.2d 1122, 1124 (Pa. Super. Ct. 1987).

Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr., No. CV 13-03101, 2015 WL 5439223, at

*15 (E.D. Pa. Sept. 15, 2015).

At this stage, it is not clear whether Kappe would be able to obtain the information it seeks through discovery. For this reason, Defendants' motion is denied without prejudice as to Count IX.

With respect to Defendants' Motion to Dismiss Kappe's claim for an injunction, Defendants are correct that "[a]n injunction is not a cause of action, but rather it is a form of relief." See Rooney v. City of Philadelphia, 623 F. Supp. 2d 644, 647 n.2 (E.D. Pa. 2009). For this reason, Defendants' motion to dismiss Count XV is granted.

## IV.    Conclusion

As a result of the rulings in this Memorandum, Kappe's CFFA claim in Count XIV of the Complaint is dismissed with prejudice; Kappe's fraud claims in Count VII are dismissed without prejudice; Kappe's trade libel claim in Count XVI is dismissed without prejudice; and Kappe's claim for an injunction in Count XV is dismissed with prejudice. In all other respects, Defendants' motion is denied. Kappe is granted leave to conduct jurisdictional discovery with respect to Defendants Leyburn, Thompson, and Jeffrey and Kathleen Mancini. A separate order follows.

BY THE COURT:

_/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge

23