UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KAPPE ASSOCIATES, INC.,
Plaintiff,

v.

CHESAPEAKE ENVIRONMENTAL EQUIPMENT, LLC; JASON NORTH; JEFFREY MANCINI; KATHLEEN MANCINI; NATHAN LEYBURN; DANIEL THOMPSON,
Defendants.

No. 5:15-cv-02211

**MEMORANDUM**

**Motion to Dismiss Amended Complaint, ECF No. 27 – Granted in part and denied in part**

**Joseph F. Leeson, Jr.**
**United States District Judge**

**August 31, 2016**

## I. INTRODUCTION

On April 24, 2015, Plaintiff Kappe Associates, Inc. ("Kappe") initiated this action, asserting a violation of the Lanham Act and state tort claims, after several of its former employees formed a competing business. After completing jurisdictional discovery, Kappe filed an Amended Complaint, which Defendants have moved to dismiss. For the reasons set forth below, Defendants' Motion to Dismiss Amended Complaint is granted in part and denied in part.

## II. BACKGROUND

In an opinion dated March 31, 2016, this Court addressed Defendants' first Motion to Dismiss for lack of personal jurisdiction over Defendants Jeffrey Mancini, Kathleen Mancini, Nathan Leyburn, and Daniel Thompson, and for failure to state a claim. *See* Opinion dated March 31, 2016, ECF No. 23. The Undersigned concluded that Kappe had failed to establish

that this Court had personal jurisdiction over Leyburn, Thompson, and the Mancinis, but that there were sufficient factual allegations to allow Kappe to conduct jurisdictional discovery. This Court also determined that Kappe had failed to state a claim for a violation of the Computer Fraud and Abuse Act, for fraud, for trade libel, and for a separate injunction claim. *Id.*[1]

Kappe filed an Amended Complaint on May 31, 2016. Am. Compl., ECF No. 26.[2] According to the Amended Complaint, Kappe is a Maryland corporation that operates "as a manufacturers' representative of various manufacturers and sellers of equipment, products and services used in public and private potable water and wastewater treatment plants, pumping stations and related potable water and sanitary sewer facilities." Am. Compl. ¶¶ 4, 19. The geographic markets that Kappe serves include Pennsylvania, Maryland, Virginia, the District of Columbia, West Virginia, and Ohio. *Id.* ¶ 20. "Over a period of decades, as a result of considerable investment of time and effort, and at considerable expense, Kappe has developed information as to the characteristics of water and wastewater systems. . . . [that] constituted confidential trade secrets and/or proprietary information," and has "also developed confidential marketing and pricing information." *Id.* ¶¶ 25-28. Additionally, "Kappe developed proprietary

---

[1] The Court dismissed Count VII without prejudice, Count XIV with prejudice, Count XVI without prejudice, and Count XV with prejudice.

[2] The Amended Complaint adds Kathleen Mancini as a defendant in Count VI. Further, Kappe reasserts its fraud claims in Count VII of the Amended Complaint against all Defendants, combining the allegations in Counts VII and X of the original Complaint. However, Kappe did not renumber all the counts and the Amended Complaint does not contain a Count X, nor a Count VIII.

Count VIII of the original Complaint was raised against Edward J. Serowka, Sr., who is no longer a party to this action. Consistent with Plaintiff's Motion for Severance of all claims against Defendants Edward J. Serowka, Sr., and Lakeland Innovatech, which was granted on October 7, 2015, *see* ECF Nos. 18-19, the Amended Complaint removed these Defendants from the list of parties. However, Plaintiff mistakenly includes Edward J. Serowka, Sr., in Count VIII of the Amended Complaint. Consistent with the Motion for Severance, ECF No. 18, and the Order dated October 7, 2015, ECF No. 19, he is dismissed.

information and plans for its package plants," which it marked under the name "KA Systems" to be sold primarily to non-municipal entities. *Id.* ¶¶ 44-47.

Defendant Chesapeake Environmental Equipment, LLC, ("Chesapeake") is a Maryland limited liability company that was formed on or about October 15, 2013. *Id.* ¶¶ 5-6. Defendant Jason North is a resident of Pennsylvania and the President of Chesapeake. *Id.* ¶¶ 7-8. Defendant Jeffrey Mancini ("Mancini") is a resident of Virginia and a Vice-President of Chesapeake. *Id.* ¶¶ 9, 11. Defendant Kathleen Mancini is also a resident of Virginia and is the wife of Jeffrey Mancini. *Id.* ¶ 10. Defendant Nathan Leyburn is a resident of Maryland and a Vice-President of Chesapeake. *Id.* ¶¶ 12-13. At the time this action was initiated, Defendant Daniel Thompson was a resident of Maryland, *see* Compl. ¶ 14, but now resides in Colorado, Am. Compl. ¶ 14. Thompson was contemplated to be an owner of Chesapeake. *Id.* ¶ 16. Defendants North, Thompson, and Mancini[3] are former Kappe employees. "Thompson advised Kappe in August or September of 2013 that he was resigning," and North and Mancini resigned on October 25, 2013. *Id.* ¶¶ 177, 193.

According to the Amended Complaint, Kathleen Mancini, Mancini, Thompson, Leyburn, and North exchanged emails regarding the formation of Chesapeake and the operation of entities that would be competitive with Kappe. *Id.* ¶ 86. Kathleen Mancini, Mancini, Thompson, and Leyburn knew North was in Pennsylvania at the time of their communications. *Id.* ¶¶ 86. Mancini, Thompson, and North sent these emails using the computers Kappe bought for them while employees. *Id.* ¶¶ 64, 82. Kappe alleges that these Defendants wiped their computers clean before returning them, *id.* ¶¶ 67-71, and complains about Defendants' alleged failure to

---

[3] Any reference herein to "Mancini" relates solely to Jeffrey Mancini. This Court will refer to Kathleen Mancini by both names.

respond to jurisdictional discovery requests, claiming that they failed to produce emails that Kappe was able to secure through other means, *id.* ¶¶ 71-82.[4]

In 2012, Mancini requested that Kappe pay for the relocation of he and Kathleen Mancini to Virginia where he would assume responsibility for Kappe's Virginia sales territory. Am. Compl. ¶¶ 275-277. Kappe also paid the Mancinis funds to enhance the marketability of their Maryland residence. *Id.* ¶ 278. In April 2013, the Mancinis accepted additional money from Kappe as tax "make-up" money. *Id.* ¶ 279. By April 2013, Mancini had already started to compete with Kappe and planned to resign. *Id.* ¶ 280. He and Kathleen Mancini knowingly made false representations to, and concealed facts from, Kappe. *Id.* ¶ 283.

In emails dated September 1, 2013, and September 3, 2013, Mancini and Leyburn exchanged and discussed the Business Plan the individual Defendants developed for Chesapeake. *Id.* ¶¶ 93-96, 117; Bus. Plan, Ex. E, ECF No. 26-1. This Business Plan, as well as the emails, is attached to the Amended Complaint.[5] Bus. Plan. This Business Plan lists North, Mancini, Leyburn, and Thompson on the cover page. *Id.* These Defendants are also listed as owners in the Company Description, as part of the Sales Team, and as members in the Business Plan's section on Operations and Organizational Structure. *Id.* ¶¶ 97, 125; Bus. Plan 4-5, 7. The

---

[4] Kappe's request for a spoliation inference in light of these alleged actions, which notably were not raised in a motion to compel during the period of jurisdictional discovery, is denied. *See Lasala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 479 (3d Cir. 2011) (affirming the district court's refusal to allow jurisdictional discovery because the allegations of spoliation were speculative and conclusory); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78-79 (3d Cir. 1994) (discussing the "key considerations in determining whether [a spoliation] sanction is appropriate").

[5] *See also* Ex. D, ECF No. 26-1 (emails dated September 1, 2013, between Mancini and North regarding the Business Plan); Exs. E and K, ECF No. 26-1 (emails dated September 3, 2013, between North and Leyburn, which were copied to Mancini, regarding the Business Plan); Ex. K, ECF No. 26-1 (emails dated August 13 and 14, 2013, between North, Mancini, and Kathleen Mancini indicating that North wanted Kathleen Mancini's opinion on Chesapeake's logo, and emails dated August 17 and 18, 2013, between North and Mancini, regarding the Business Plan).

Business Plan states that Chesapeake "shall use home or regional offices to minimize travel and have a stronger presence in each of our regions[, which includes,] the eastern Pennsylvania and south New Jersey regions. . . ." *Id.* at 5. The Business Plan also describes the company's intent of future growth in Eastern Pennsylvania. *Id.* at 9.

In furtherance of this Business Plan[6] that included Evan Walters as a member of Chesapeake's sales team, *see* Bus. Plan 5, Mancini traveled to Pennsylvania to meet with him on September 13, 2013, Am. Compl. ¶¶ 100-101. At the meeting, Mancini solicited Walters to leave his employment with Kappe and join the Chesapeake project. *Id.*

Following the formation of Chesapeake, Thompson sent an email, using the email address dthompson@chesequip.com, to Leyburn dated December 10, 2013, recommending certain business strategies that would affect Kappe. *See* Am. Compl. ¶¶ 131-133 (citing Email dated December 10, 2013, Ex. J, ECF No. 26-1). For example, Thompson advised that "the key

---

[6] Defendants assert that the Business Plan attached to the September 2013 emails is not the finalized plan. *See* Defs.' Mot. Dismiss 9, ECF No. 27; Final Plan, Ex. I, ECF No. 27-1. They attach the final Business Plan to their Motion to Dismiss. Comparatively, the final Business Plan lists North, Mancini, and Leyburn on the cover page, but not Thompson. *See* Final Plan, cover page. Similarly, only North, Mancini, and Leyburn are listed as owners in the Company Description, as part of the Sales Team, and as members in the Plan's section on Operations and Organizational Structure. *Id.* at 6, 9. In the Office Locations section of the final Business Plan, Chesapeake states that it shall "utilize home or regional offices to minimize travel and have a stronger local presence in each of our regions," and lists the regions as "the VA region" and the "Maryland/Northern Virginia/District of Columbia/Delaware regions," *id.* at 7, as opposed to office locations in Pennsylvania and New Jersey. However, this section specifically refers to "figure 2" directly below, which is a map of the Middle Atlantic states and contains three stars illustrating the regional and home office locations. *Id.* One of the stars is within the borders of Virginia, one is within the borders of Maryland, and the third is within the borders of Pennsylvania. *Id.* Lastly, the final Business Plan describes Chesapeake's intent of future growth in "Eastern/Central Pennsylvania." *Id.* at 10.

Mancini testified that one purpose of the initial Business Plan was to consider ideas. Mancini Dep. 52:22 – 53:3, Ex. Kappe-2, ECF No. 28-3. The purpose of the finalized Business Plan, on the other hand, was to present it to prospective manufacturers where Chesapeake wanted to market. *Id.* at 53:1-7. Mancini stated that Chesapeake was destined to compete with Kappe in Pennsylvania. *Id.* at 52:1-15.

to [Ed Serwoka, who had an ongoing contractual arrangement with Kappe,][7] is showing movement." *Id.* Thompson stated that he "will call Ed tomorrow and have him officially severe [sic] his ties to Kappe." *Id.* Additionally, Thompson advised Leyburn to "[k]eep calling Marc, he saw the worst of KA systems" and that he had "had a couple of 'off the record' conversations about what the 'future of Kappe holds.'" *Id.*

On December 19, 2013, North, Mancini, Leyburn, Thompson, and Don Lassahn of Morris & Ritchie Associates, Inc., an architectural and structural engineering firm, exchanged a series of emails discussing the Conowingo project, which is in Maryland. Am. Compl. ¶ 128 (citing Emails dated December 19, 2013, Ex. I, ECF No. 26-1). Thompson had worked on the Conowingo project while employed by Kappe. *Id.* ¶ 39. North advised the other Defendants that Lassahn had said "that he will only buy it through Daniel [Thompson]" and that he, North, had advised Lassahn "that was fine and we are working with Daniel." Emails dated December 19, 2013, Ex. I. North indicated "[w]e have some serious work to do" that included requoting the project "through Chesapeake" and getting "Kappe's name out of there asap." *Id.*; Am. Compl. ¶ 129. A few hours later, Thompson responded, in an email copied to Mancini and Leyburn, stating that he would touch base with Ed Serwoka "to get things going" and "also get him to officially drop Kappe." Emails dated December 19, 2013, Ex. I; Am. Compl. ¶¶ 52-53, 131-133.

Later that day, another series of emails was exchanged between North, Mancini, Leyburn, Thompson, and Lassahn regarding the Broad Creek Boy Scout Camp in Maryland. Am. Compl. ¶¶ 145-146 (citing Emails dated December 19, 2013, Ex. I). Thompson had also worked to develop plans for this project while employed by Kappe. *Id.* ¶ 145. In one email Thompson sent to North, Thompson reported: "I worked hard to get our specifications viewed as the 'spec'. We

[7] Am. Compl. ¶ 52.

just need to change the Kappe/Ka to Cheese/Lakeland. Don should be game for anything we want him to do." Emails dated December 19, 2013, Ex. I.

Subsequently, in an effort to separate Thompson from litigation with Kappe, Defendants decided that he would start a separate company, of which he would be the sole member, to facilitate Chesapeake's orders, and that his business card would "show Daniel Thompson, representing Chesapeake Environmental Equipment." Am. Compl. ¶¶ 126-127 (citing Emails dated June 23, 2014, Ex. H, ECF No. 26-1). Emails from November, 2014, between North, Mancini, Leyburn, and Thompson, show Thompson's continued use of the email address dthompson@chesequip.com.[8] *See* Emails dated November 2014, Ex. C, ECF No. 26-1.

Kappe alleges that Chesapeake competes with it in the Pennsylvania markets and does business with Pennsylvania entities. Am. Compl. ¶¶ 90-92. For example, not only does Chesapeake do business with Dutchland, Inc., it also represents Wickersham Construction & Engineering, Inc., located in Lancaster, Pennsylvania. *Id.* ¶ 92. Chesapeake's business with these two Pennsylvania companies alone resulted in $269,430.00 in 2014. *See* Emails dated November 2014, Ex. C. Further, Mancini does business with Pennsylvania manufacturers, *see* Am. Compl. ¶ 111, and occasionally speaks with engineers in Pennsylvania, North Dep. 135:3 – 136:1, Ex. Kappe-3, ECF No. 28-3. Leyburn also engages in business with Pennsylvania-based contractors and engineering firms, *see* Am. Compl. ¶¶ 118-119, and has called upon and seen engineers in Pennsylvania, Leyburn Dep. 53:15-21, Ex. Kappe-18, ECF No. 28-5.

Additionally, "Chesapeake maintains on its website 'Line Cards' listing manufacturers it represents and the regions in which it represents the manufacturers and where it conducts its

---

[8] The email addresses of North, Mancini, and Leyburn, which are published on Chesapeake's website, also end in "chesequip.com."

business." Am. Compl. ¶ 106; Line Card, Ex. F.[9] Leyburn prepared the Line Cards. Mancini Dep. 78:19-23, ECF No. 28-3. One of the Line Cards states that Chesapeake is "Proudly Serving Eastern PA." Am. Compl. ¶¶ 107-108, 120; Line Card, Ex. F. The names, telephone numbers, and email addresses for North, Mancini, and Leyburn are provided at the top of this Line Card. Am. Compl. ¶ 109; Line Card, Ex. F. Among the approximately twelve manufacturers Chesapeake advertises that it represents are the Tigg Corporation, a Pennsylvania company, *see* Am. Compl. ¶¶ 110-111; Line Card, Ex. F, and the Calgon Carbon Corporation, also a Pennsylvania company, *see* Line Card, Ex. F; Mancini Dep. 49:5-19.

On June 15, 2016, Defendants filed a Motion to Dismiss Amended Complaint, again asserting lack of personal jurisdiction over Mancini, Kathleen Mancini, Leyburn, and Thompson.[10] Defs.' Mot. Dismiss, ECF No. 27. Defendants also move to dismiss Count VII, arguing that Kappe failed to allege fraud with specificity and that certain allegations should be dismissed because they do not constitute fraud. *Id.* (citing Am. Compl. ¶¶ 257-262 and 269-273). Kappe filed a response and affidavit in opposition to the motion on June 29, 2016, ECF Nos. 28-29, and Defendants filed a reply on July 7, 2016, ECF No. 30.

## III. STANDARD OF REVIEW

The standards of review for a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim were outlined in this Court's March 31, 2016 opinion and are adopted herein. *See* Opinion dated March 31, 2016, 5-7.

---

9 A line card is a "printed brochure that lists the names, descriptions and manufacturers of products sold by a third party, like a distributor, sales representative or value-added reseller (VAR). These 'product line cards' can be used in sales calls or offered for download to be used by potential customers as useful reference for comparison of product specifications and costs." TechTarget, http://searchitchannel.techtarget.com/definition/line-card (last visited August 11, 2016).

10 North and Chesapeake concede personal jurisdiction.

## IV. ANALYSIS

***A. This Court has personal jurisdiction over Jeffrey Mancini and Nathan Leyburn, but not over Daniel Thompson or Kathleen Mancini.***

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 258-259 (3d Cir. 1998). Pennsylvania's long-arm statute allows the court to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b); *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993) ("Once the plaintiff has made out a prima facie case of minimum contacts, as here, 'the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.''").

First, Kappe argues that the Line Cards Chesapeake maintains on its website specifically target Pennsylvania customers and support the existence of personal jurisdiction over Leyburn and Mancini. "If the Court finds that Defendant targeted the forum state then 'purposeful availment' is satisfied. Additionally, if the claim relates to or arises out of the use of the website,

Defendant is within the personal jurisdiction of the court." *TRE Servs. v. United States Bellows, Inc.*, No. 2:12-cv-00663, 2012 U.S. Dist. LEXIS 96731, at *11 (W.D. Pa. 2012) (citations omitted). One of the Line Cards specifically targets Pennsylvania customers by stating that Chesapeake is "Proudly Serving Eastern PA" and listing at least two Pennsylvania companies among the names of approximately twelve manufacturers it represents, *see Duell ex rel. D.D. v. Kawasaki Motors Corp.*, 962 F. Supp. 2d 723, 729-30 (D.N.J. 2013) (concluding that the defendant intentionally targeted out-of-state consumers where its website invited customers to make it "the place to shop whether you live in Delaware, Pennsylvania, New Jersey, or Maryland" and advised that its store was "easily 'accessible from New Jersey via the Delaware Memorial Bridge'"), therefore making personal jurisdiction over Chesapeake proper, *see S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 540 (E.D. Pa. 1999) (determining that "a web site targeted at a particular jurisdiction is likely to give rise to personal jurisdiction"). Further, the fact that the contact information for Mancini and Leyburn, along with North, is on the Line Card Leyburn prepared is evidence of these Defendants' purposeful availment. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (holding that "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" may indicate an intent or purpose to serve the market in the forum State).

Next, Kappe asserts that Kathleen Mancini, Mancini, Leyburn, and Thompson repeatedly corresponded with North through emails knowing he was in Pennsylvania. In addition to the emails discussed in this Court's March 31, 2016 opinion, which were found to be insufficient to establish personal jurisdiction over these Defendants, Kappe attached additional emails to the

Amended Complaint. Of significance are the emails dated September 1, 2013, and September 3, 2013, between Mancini, Leyburn, and North that discussed and attached the Business Plan Defendants developed for Chesapeake. It is not simply that Mancini and Leyburn knew North was in Pennsylvania at the time of their correspondence, *see Grand Entertainment Group*, 988 F.2d at 482 ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."), but their discussion of the Business Plan that is relevant. Both this Business Plan and the final Business Plan state that Mancini and Leyburn are owners and members of Chesapeake's sales team, and indicate their intent to open a Chesapeake office in Pennsylvania and further grow its presence in the State. Accordingly, these emails are evidence of Mancini's and Leyburn's intent to avail themselves of the privilege of conducting business in Pennsylvania. *See Ebeling & Reuss, Ltd. v. Swarovski Int'l Trading Corp. A.G.*, No. 88-4878, 1988 U.S. Dist. LEXIS 8754, at *2-3 (E.D. Pa. Aug. 4, 1988) ("This court may exercise personal jurisdiction over a non-resident of Pennsylvania who has purposefully availed itself of the privilege of conducting business in Pennsylvania."), *aff'd* 866 F.2d 1409 (3d Cir. 1988).

In addition to having the intent to avail themselves of the privilege of doing business in Pennsylvania, Mancini and Leyburn had direct contacts in the state. While still employed with Kappe, Mancini traveled to Pennsylvania to solicit a Kappe employee to join the Chesapeake project, consistent with the original Business Plan.[11] *See Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 608 (E.D. Pa. 2010) (finding that the complaint alleges that the defendant's actions in forming a competing business "was the direct cause of the alleged Lanham Act violations and

---

[11] While nothing apparently came out of this contact, it is still relevant in deciding whether there were minimum contacts in the State. Furthermore, the Breach of Contract and Breach of Fiduciary Duties claims allegedly arose, at least in part, from this conduct.

breaches of contract" and that the defendant's "purposeful contact with Pennsylvania by helping to create a Pennsylvania corporation therefore brings with it the obligation of submitting to Pennsylvania's jurisdiction over those activities"); *Cordis Corp. v. Advanced Cardiovascular Sys.*, No. 97-635, 1999 U.S. Dist. LEXIS 15527, at *12-14 (D. Del. Sept. 17, 1999) ("The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is 'part of a general business plan . . . to solicit business in [the forum State] and deliver products to customers in [the State].'" (quoting *Thorn EMI N. Am. v. Micron Technology*, 821 F. Supp. 272, 274 (D. Del. 1993)). After the formation of Chesapeake, both Mancini and Leyburn spoke with engineers and contractors in Pennsylvania, and Leyburn saw engineers in Pennsylvania. *See Burger King Corp.*, 471 U.S. at 473 ("[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950))). Furthermore, Chesapeake does business with a number of Pennsylvania companies.[12]

---

[12] "Individuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts." *Bowers v. NETI Technologies, Inc.*, 690 F. Supp. 349, 357 (E.D. Pa. 1988). "However, a recognized exception to this general rule is that a corporate agent may be held personally liable for torts committed in their corporate capacity." *FFR SE, LLC v. Sanborn*, No. 14-5439, 2015 U.S. Dist. LEXIS 84467, at *17 n.10 (E.D. Pa. June 30, 2015). "A court examines 'the officer's role in the corporate structure, the quality of the officer's contacts, and the extent and nature of the officer's participation in the alleged tortious conduct.'" *Id.* (quoting *Maleski v. DP Realty Trust*, 653 A.2d 54, 63 (Pa. Commw. Ct. 1994)).

Because Mancini and Leyburn are owners of Chesapeake and their conduct forms the basis of the tort claims, the Court will consider any acts they performed on behalf of Chesapeake in deciding personal jurisdiction. *See FFR SE, LLC*, 2015 U.S. Dist. LEXIS 84467, at *16-18 n.10 (finding that the owner and president was subject to personal jurisdiction because he was "a key player in the corporate structure" and "made many of the alleged misrepresentations forming the basis of [the plaintiff's] tort claims in Pennsylvania on more than one occasion"); *Cont'l*

Accepting Plaintiff's allegations as true and considering all the evidence discussed above, this Court concludes that Kappe has made a prima facie case of personal jurisdiction over Mancini and Leyburn. *See Bradley v. Powell*, No. 15-04025, 2016 U.S. Dist. LEXIS 47007, at *4-5 (E.D. Pa. Apr. 7, 2016) (finding that it would not be unreasonable to exercise jurisdiction and that "this case [does not] involve one isolated occurrence where the defendant had no connection with the forum state"). Not only did Mancini and Leyburn intend to avail themselves of the opportunity to do business in Pennsylvania, they in fact had contacts in Pennsylvania. *See Grand Entertainment Group*, 988 F.2d at 483 ("Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction as long as the other criteria are met."). The instant cause of action, challenging Defendants' creation of a competing business that interfered with Kappe's ongoing contractual relationships with manufacturers and engineers, arose from these contacts. *See Brown & Brown, Inc.*, 745 F. Supp. 2d at 608.

Furthermore, Defendants have not established that exercising personal jurisdiction in this Court would violate the notions of fair play and substantial justice. Rather, Defendants' purposeful availment of the privilege of conducting business in the state "makes jurisdiction consistent with 'fair play and substantial justice' notions." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 874 (2011). The Motion to Dismiss Mancini and Leyburn is therefore denied.

---

*Materials, Inc. v. Robotex, Inc.*, No. 14-6941, 2015 U.S. Dist. LEXIS 50708, at *4-7 (E.D. Pa. Apr. 17, 2015) (finding that this case fell outside the general rule that "a court does not have personal jurisdiction over an individual defendant whose only contact with the forum state are those taken in his corporate capacity" because the allegations of the complaint established that the individual defendant, as president of the defendant-corporation, negotiated in Pennsylvania, entered into contracts in Pennsylvania on behalf of the defendant-corporation, and travelled to Pennsylvania on three or four occasions to discuss the ongoing business relationship with the defendant-corporation and to strategize marketing).

Conversely, Plaintiff has not shown that Thompson has the requisite minimum contacts with Pennsylvania to create personal jurisdiction. The emails he exchanged with North on December 19, 2013,[13] appear to relate to Thompson's activities to acquire Kappe's clients for Chesapeake, but do not establish that he conducted any activities in the state of Pennsylvania. Rather, Thompson's work for Chesapeake appears to be limited to its projects in Maryland. Thompson was copied in several other emails exchanged among Defendants, but again there is no evidence that he took any action in Pennsylvania. Further, because the final Business Plan removed all references to Thompson, the original Business Plan cannot be used as evidence to support personal jurisdiction over him. *See Principal Fin. Servs. v. Big Fin. & Ins. Servs.*, 451 F. Supp. 2d 1046, 1058-59 (S.D. Iowa 2006) (determining that an abandoned business plan is not sufficient to support personal jurisdiction where the plan was never executed and there was no evidence that the business plan resulted in contacts with the state). Although Thompson may have, at one time, intended to avail himself of the privilege of doing business in Pennsylvania, there is insufficient evidence that he made the necessary minimum "contacts" in the state in furtherance of this intent so as to "purposely" avail himself of the privilege. Finally, the co-conspirator doctrine does not subject Thompson to personal jurisdiction because Plaintiff has not shown that Thompson was, or should have been, aware of "'substantial acts in furtherance of the conspiracy occur[ing] within the forum state.'" *Sugartown Worldwide LLC v. Shanks*, No. 14-5063, 2015 U.S. Dist. LEXIS 36495, at *9 (E.D. Pa. Mar. 24, 2015) (quoting *Doe v. Hesketh*, 15 F. Supp. 3d 586, 595 (E.D. Pa. 2014)). He is dismissed for lack of personal jurisdiction.

Similarly, Kathleen Mancini does not have the required minimum contacts with Pennsylvania to support personal jurisdiction. There is no evidence that Kathleen Mancini

---

[13] These emails were considered by the Court in its March 31, 2016 opinion and found to be insufficient to establish personal jurisdiction. *See* Opinion 9-10, 12-13.

conducted any activity in the state. The emails dated August 13 and 14, 2013, between North, Mancini, and Kathleen Mancini wherein Kathleen Mancini's opinion was requested on Chesapeake's logo do not evidence any actual conduct on her part, especially in Pennsylvania. Her mere knowledge of the individual Defendants' intent to form a competing business and of the Business Plan, derived in part from being copied on other emails is also not sufficient to extend personal jurisdiction to her. Under the co-conspirator doctrine, "[i]t is not enough that the non-forum co-conspirator is part of the conspiracy as plaintiff must plead the defendant's involvement with specificity." *Sugartown Worldwide LLC*, 2015 U.S. Dist. LEXIS 36495, at *9-10. Here, Plaintiff does not allege that Kathleen Mancini knew, or should have been aware, of Defendants' contacts in Pennsylvania; rather, the Amended Complaint states that when Kathleen Mancini was questioned about whether she knew of the locations Mancini would be conducting business, she answered "No." Am. Compl. ¶ 151. Further, she is not, nor was she ever intended to become, an owner or member of Chesapeake; therefore, Chesapeake's business contacts, website, and Line Cards, do not support jurisdiction over her. Finally, because Kathleen Mancini was never an employee of Kappe, this cause of action does not arise from her intent or actions to form a business to compete, or to operate in conjunction, with Kappe. The Motion to Dismiss Kathleen Mancini for lack of personal jurisdiction is granted.

***B. Fraud Claims***

Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d

Cir. 2002) (quoting *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577 (D.N.J. 2001)). "In order to meet the Rule 9(b) standard, a plaintiff must 'plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.'" *See Binder v. Weststar Mortg., Inc.*, No. 14-7073, 2016 U.S. Dist. LEXIS 90620, at *48-49 (E.D. Pa. July 13, 2016) (quoting *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 316 (E.D. Pa. 2012)).

Defendants assert that Count VII should be dismissed for failure to state a claim; however, they do not challenge the allegations of fraud in connection with the relocation expenses. Rather, they argue that paragraph 257[14] is merely a restatement of Count V, Breach of Fiduciary Duties, and not a fraud claim. Next, they contend that paragraphs 258 through 262 do not form the basis for fraud as they pertain to entities, such as Big Momma, that were not formed and to business activities that did not occur, such as the "potentially illegal bid rigging." Defendants assert that the allegations in paragraphs 269 through 273 that Mancini, North, and Thompson wiped Kappe's computers clean is also not fraudulent activity. Defendants argue that Count VII is subject to higher pleading standards and should be dismissed for insufficient particularity.

Kappe responds that Defendants do not attack paragraphs 274 through 289 of Count VII so the request to dismiss the entire count is unsupported. Additionally, Kappe asserts that no paragraph in Count VII should be dismissed and, as to paragraphs 269 to 273, argues that

14 This paragraph states: "At all time [sic] during the time when North, Mancini and Thompson were Kappe employees, they falsely and fraudulently represented that they were engaged in business activities for the benefit of Kappe." Am. Compl. ¶ 257.

Mancini, Thompson, and North used Kappe's computers for a purpose directly antagonistic to Kappe's interest, and tried to conceal their improper use by wiping them clean.

Defendants' assertion that paragraph 257 is merely a restatement of Count V is unpersuasive. *See Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, No. 09-236, 2009 U.S. Dist. LEXIS 113209, at *14-16 (W.D. Pa. Dec. 3, 2009) (rejecting the defendants' arguments that the fraud claim was redundant with the breach of contract claim). While "Pennsylvania courts are cautious about permitting tort recovery on contractual breaches,"[15] the allegations in this paragraph may give rise to a separate tort. *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 723-24 (E.D. Pa. 2014) (finding that the defendant took affirmative steps to conceal his efforts in forming a competing business and agreed with other employees of the plaintiff to work in secret to avoid detection and termination, and therefore, the alleged fraud fell outside the bounds of the contractual agreements and could give rise to a separate claim of fraudulent misrepresentation). The request to dismiss this paragraph is therefore denied.

However, Defendants' request to dismiss paragraphs 258 through 262 is granted. Kappe's allegations regarding the formation of a "woman owned business enterprise" and Mancini's "potentially illegal bid rigging and conspiratorial" actions, based on Mancini's "practice bidding" with a third-party, do not constitute fraud. Kappe does not allege any false or fraudulent misrepresentation, and its claim that Mancini, North, and Thompson did "not initially

---

[15] The Court recognizes that while the existence of a contractual relationship does not preclude one party to the contract from bringing a tort claim against the other, the gist of the action doctrine "forecloses a party's pursuit of a tort action for the mere breach of contractual duties, 'without any separate or independent event giving rise to the tort.'" *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 723-24 (E.D. Pa. 2014) (quoting *Smith v. Lincoln Benefit Life Co.*, No. 08-01324, 2009 U.S. Dist. LEXIS 24941, at *60-61 (W.D. Pa. Mar. 23, 2009)). This "doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims" by precluding "plaintiffs from recasting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver.*, 2002 PA Super 347, ¶ 14 (Pa. Super. Ct. 2002).

disclose their ownership interest in Big Momma," is not sufficient to support a finding of fraud. *See Morrison v. AccuWeather, Inc.*, No. 4:14-cv-0209, 2016 U.S. Dist. LEXIS 68998, at *12 (M.D. Pa. May 26, 2016) (concluding that if "the other elements of fraud are met, concealment can be sufficient to a finding of fraud" but that "mere silence is not sufficient in the absence of a duty to speak" and that "the concealment must have been 'intentional and it must relate to material information'"). Further, Kappe has failed to allege that any Defendant intended that such misrepresentation, or fraudulent concealment, be acted upon or that Kappe acted upon any such conduct to its damage.

Finally, at this stage of the proceedings, the request to dismiss paragraphs 269 to 273, alleging that Defendants fraudulently concealed the use of their work computers to compete with Kappe and then wiped the computers clean, is denied. Although Rule 9(b) requires a heightened level of pleading, a fraud claim based on a defendants' alleged concealment necessarily involves less particularity. *See Rolite, Inc. v. Wheelabrator Envtl. Sys.*, 958 F. Supp. 992, 1006 (E.D. Pa. 1997) ("A fraud claim based upon the failure to state certain true facts necessarily involves less particularity in pleading than would the pleading of fraud based upon false statements: a plaintiff can plead a particular time, day, and place with regard to the latter, but not the former."). The Third Circuit Court of Appeals has directed district courts to be "be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (quoting *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)). Accordingly, the request to dismiss these paragraphs is denied at this time.

## V. CONCLUSION

Jeffrey Mancini and Nathan Leyburn had minimum contacts with Pennsylvania such that subjecting them to the personal jurisdiction of this Court does not offend traditional notions of fair play and substantial justice. Plaintiff has also shown prima facie evidence that these Defendants had the intention to avail themselves of the privilege of doing business in Pennsylvania. Accordingly, the Motion to Dismiss Mancini and Leyburn for lack of personal jurisdiction is denied.

However, the contacts of Mancini and Leyburn are not attributable to Thompson or to Kathleen Mancini and they do not have the requisite minimum contacts with Pennsylvania to create personal jurisdiction. The Motion to Dismiss Thompson and Kathleen Mancini for lack of personal jurisdiction is therefore granted.

Finally, Defendants' Motion to Dismiss Count VII for fraud is granted in part and denied in part. The request to dismiss paragraphs 258 through 262 of the Amended Complaint is granted because these allegations do not support a fraud claim. At this stage of the proceedings, however, the request to dismiss paragraphs 257 and 269 through 273 is denied.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*__________
JOSEPH F. LEESON, JR.
United States District Judge